**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
JOHN DOE,                                        :
                                                 :    **Civil Action No:** 3:25-cv-357 (MAD/ML)
                                                 :
            *Plaintiff,*                          :
                                                 :
                                                 :
        -against-                                :
                                                 :
                                                 :
CORNELL UNIVERSITY                               :
                                                 :
            *Defendant.*                          :
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINIFF'S**
**<u>MOTION TO PROCEED UNDER A PSEUDONYM</u>**


**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff John Doe*

Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Tara J. Davis, Esq.
Kristen Mohr, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com
kmohr@nmllplaw.com

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 1

ARGUMENT .................................................................................................................... 5

  I.    Legal Standards......................................................................................................... 5

    a.   New York Law Requires Anonymity. .................................................................. 5

    b.   The Second Circuit Balancing Test. .................................................................... 5

  II.   Plaintiff's Interest in Remaining Anonymous Outweighs the Need for Public
       Disclosure. ............................................................................................................... 7

    a.   The Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature. ... 7

    b.   Identification of Plaintiff would Pose a Risk of Retaliatory Physical or Mental Harm to
         Plaintiff. .............................................................................................................. 10

    c.   Identification Presents Other, Severe Harms, Including that the Injury Litigated Against
         Would Be Incurred as a Result of the Disclosure of Plaintiff's Identity. ...................... 11

    d.   Plaintiff Is Particularly Vulnerable to the Possible Harms of Disclosure, Particularly in
         Light of His Age. ................................................................................................. 17

    e.   The Suit is Challenging the Actions of a Partially Federally-Funded University. ........ 17

    f.   Defendant Is Not Prejudiced by Allowing Plaintiff to Press His Claims Anonymously.
         18

    g.   The Plaintiff Has Sought to Keep his Identity Confidential. ......................................... 18

    h.   The Public's Interest in the Litigation is not Furthered by Requiring Plaintiff to Disclose
         His Identity, and There is a Weak Public Interest in Knowing Plaintiff's Identity. ....... 19

    i.   There Are Minimal Alternative Mechanisms for Protecting the Confidentiality of the
         Plaintiff. .............................................................................................................. 20

CONCLUSION................................................................................................................. 20

i

## TABLE OF AUTHORITIES

**Cases**

*Doe v. Alger*,
  317 F.R.D. 37 (W.D. Va. 2016) ............................................................... 8, 10, 14

*Doe v. Allegheny College*,
  Docket No. 17-cv-00031 (W.D.Pa. May 1, 2017) ........................................ 9

*Doe v. Amherst Coll.*,
  238 F. Supp. 3d 195, 202 n.1 (D. Mass. 2017) ........................................... 8

*Doe v. Baum*,
  903 F.3d 575 (6th Cir. 2018) ...................................................................... 7

*Doe v. Brandeis Univ.*,
  177 F. Supp. 3d 561 (D. Mass. 2016) ......................................................... 8

*Doe v. Brown Univ.*,
  166 F. Supp. 3d 177 (D.R.I. 2016) .............................................................. 8

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016) .......................................................................... 8

*Doe v. Cummins*,
  662 Fed. Appx. 437 (6th Cir. 2016) ........................................................... 15

*Doe v. Del Rio*,
  241 F.R.D. 154 (S.D.N.Y. 2006) ........................................................... 18, 19

*Doe v. George Washington Univ.*,
  321 F. Supp. 3d 118 (D.D.C. 2018) ............................................................ 8

*Doe v. Middlebury*.
  No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015) ............ 9

*Doe v. Pennsylvania State Univ.*,
  336 F. Supp. 3d 441 (M.D. Pa. 2018) ......................................................... 8

*Doe v. Penzato*,
  10-CV-5154 (MEJ), 2011 WL 1833007 (N.D. Cal. May 13, 2011) ............ 9

*Doe v. Rector & Visitors of George Mason Univ.*,
  149 F. Supp. 3d 602 (E.D. Va. 2016) ........................................................ 15

*Doe v. Salisbury Univ.*,
  107 F. Supp. 3d 481 (D. Md. 2015) ............................................................ 9

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981) ..................................................................... 20

*Doe v. Swarthmore College*,
  No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014) ........................................ 9

*Doe v. The Trustees of the Univ. of Pennsylvania*,
  270 F. Supp. 3d 799 (E.D. Pa. 2017) .......................................................... 8

*Doe v. Trs. of Univ. of Pennsylvania*,
  Docket No. 16-cv-05088-JP (E.D. Pa. Sept. 26, 2016) ............................. 10

*Doe v. Trustees of Boston Coll.*,
  892 F.3d 67 (1st Cir. 2018) ......................................................................... 8

*Doe v. Trustees of Dartmouth Coll.*,
  Docket No. 18-CV-040-LM, 2018 WL 2048385 (D.N.H. May 2, 2018) ...... 16

*Doe v. Univ. of S. Florida Bd. of Trustees*,
  15-CV-682-T-30 (EAJ), 2015 WL 3453753 (M.D. Fla. 2015) .................... 9

*Doe v. Univ. of S.C.*,
  2018 WL 1215045 (D.S.C. Feb. 12, 2018) ........................................................................ 8
*Doe v. Univ. of Scis.*,
  2019 WL 632022 (E.D. Pa. Feb. 14, 2019) ....................................................................... 8
*Doe v. Univ. of St. Thomas*,
  Docket No. 16-CV-1127, 2016 WL 9307609 (D. Minn. May 25, 2016) ............................. 16
*Doe v. Univ. of St. Thomas*,
  2016 WL 9307609 (D. Minn. May 25, 2016) ..................................................................... 8
*Doe v. Univ. of the South*,
  687 F. Supp. 2d 744 (E.D. Tenn. 2009) ............................................................................ 9
*Doe v. Virginia Polytechnic Inst. & State Univ.*,
  2018 WL 5929647 (W.D. Va. Nov. 13, 2018) .................................................................. 10
*Doe v. Washington & Lee Univ.*,
  2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ..................................................................... 9
*Does I thru XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) ......................................................................................... 18
*EW v. New York Blood Ctr.*,
  213 F.R.D. 108 (E.D.N.Y. 2003) ................................................................................ 10, 17
*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185, 189 (2d Cir. 2008) ................................................................................. 6, 20

**Statutes**
20 U.S.C. § 1232g ............................................................................................................. 19
N.Y. Educ. Law § 6448 ....................................................................................................... 5

**Other Authorities**
Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times
  (Dec. 21, 2014) https://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-
  crossing-paths-at-columbia.html ..................................................................................... 13
Brian Stelter and Tom Kludt, *NBC Fires Matt Lauer After Complaint About 'Inappropriate
  Sexual Behavior'*, CNN (Nov. 29, 2017), https://money.cnn.com/2017/11/29/media/matt-
  lauer/index.html?iid=EL ................................................................................................. 12
Carlsen et al., *#MeToo Brought Down 201 Powerful Men. Nearly Half of Their Replacements
  are Women*, N.Y. Times, (Oct. 29, 2018),
  https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html ................... 12
Cathy Young, *Exclusive: Brown University Student Speaks Out on What It's Like to Be Accused
  of Rape*, Daily Beast (June 8, 2014), https://www.thedailybeast.com/exclusive-
  brownuniversity-student-speaks-out-on-what-its-like-to-be-accused-of-rape ....................... 14
*CBS News Fires Charlie Rose After Sexual Misconduct Allegations*, CBS News (Sept. 23, 2018),
  https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexual-misconduct-allegations/ 12
Mitchell Byars, *Protests at CU set for Monday as Student Charged in Rape*, Boulder Daily
  Camera (Mar. 14, 2019) https://www.dailycamera.com/2019/03/14/protests-at-cu-set-for-
  monday-as-student-charged-in-rape/ ................................................................................ 13
Patrick Witt, *A Sexual Harassment Policy that Nearly Ruined My Life*, Boston Globe (Nov. 3,
  2014), https://www.bostonglobe.com/opinion/2014/11/03/sexual-harassment-policy-that-
  nearly-ruinedlife/hY3XrZrOdXjvX2SSvuciPN/story.html ................................................. 13

Richard Adams, *Warwick University Says Rape Threat Pair Won't Return*, Guardian (Feb. 4, 2019) https://www.theguardian.com/education/2019/feb/05/warwick-university-says-threat-pair-wont-return ................................................................................................................. 14

**INTRODUCTION**

Plaintiff, by his attorneys, Nesenoff & Miltenberg, LLP, hereby respectfully requests this Court: (i) permit Plaintiff to proceed in the above-captioned matter under the pseudonym John Doe, and to similarly permit Plaintiff to identify other non-parties to this litigation by pseudonym; and (ii) issue a protective order precluding Defendant (and its agents, employees, and representatives) from disclosing Plaintiff's identity, through court filings or otherwise. In light of the private, sensitive, and highly personal nature of the allegations contained in the Complaint, the risk that identifying Plaintiff would subject him to the precise harm he is seeking to avoid by way of this action, and the minimal public interest in learning Plaintiff's identity, Plaintiff should be permitted to proceed by pseudonym in this action.

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

**STATEMENT OF FACTS**

The complete facts underlying this litigation are set forth fully in Plaintiff's Complaint, filed simultaneously with the instant motion and incorporated herein by reference. For the Court's convenience, a summary of the relevant facts follows.

Plaintiff matriculated to Cornell in the fall of 2021 with an expected graduation date of May 2025. (Cmpl. ¶ 20) Plaintiff has maintained a 4.0 GPA at Cornell with a major in biology, and has earned the highest grade consistently in two of his Genetics classes. *Id.* Plaintiff also scored in the top 5 % of the country on his pre-medical MCAT scores. *Id.*

Plaintiff and Jane Roe[1] first met through mutual friends in 2023. (Cmpl. ¶ 21) They maintained a casual, acquaintance relationship and socialized in group settings, but had never

---

[1] Jane Roe is a pseudonym.

1

interacted one on one prior to the events described herein. (Cmpl. ¶ 22) Based on their friendly group interactions, Plaintiff invited Roe to his fraternity's formal event, and Roe accepted the invitation. (Cmpl. ¶ 23)

On December 5, 2023, the night of the formal, Roe attended a "pregame" at Plaintiff's apartment, along with friends C, K, and A. (Cmpl. ¶ 24) Plaintiff and Roe both consumed alcohol at the pregame, but neither became intoxicated. (Cmpl. ¶ 25) At the formal, Plaintiff and Roe consumed alcohol, danced, and interacted with friends. (Cmpl. ¶ 26) At approximately midnight, Plaintiff and Roe kissed while on the dance floor. (Cmpl. ¶ 27) However, Plaintiff then felt uncomfortable with the public display of affection and pulled away from Roe. (Cmpl. ¶ 28)

Later in the night on December 5, after the formal ended, Plaintiff and Roe returned back to Plaintiff's apartment in an Uber. (Cmpl. ¶ 29) Plaintiff and Roe remained in Plaintiff's living room for a few minutes, where they talked with C and his girlfriend. (Cmpl. ¶ 30) Plaintiff then asked Roe once if she wanted to go to Plaintiff's room, and Roe said yes. (Cmpl. ¶ 31) Upon entering Plaintiff's room, Plaintiff and Roe began consensually kissing. (Cmpl. ¶ 32) Roe stated, "I just want to cuddle," so Plaintiff and Roe laid together and cuddled. (Cmpl. ¶ 33) A few minutes later, Roe began touching Plaintiff's body and kissing him again. (Cmpl. ¶ 34) Roe then began to take her clothes off, and Plaintiff assisted her. (Cmpl. ¶ 35) Plaintiff then asked Roe if she wanted to use a condom, and Roe affirmatively said yes. (Cmpl. ¶ 36) Plaintiff and Roe then engaged in sexual intercourse, in which Roe was an active and willing participant. (Cmpl. ¶ 37)

Afterwards, Plaintiff and Roe fell asleep for a few hours. (Cmpl. ¶ 38) When Plaintiff woke up around 1:00 a.m., Roe was lying on his arm. (Cmpl. ¶ 39) Plaintiff then decided he should get Roe home, so he gave Roe his coat and walked her back to her apartment. (Cmpl. ¶ 40) Plaintiff and Roe talked in a friendly manner the whole way back to Roe's apartment. (Cmpl. ¶ 41)

Roe never gave any indication that she took issue with her interactions with Plaintiff. (Cmpl. ¶ 42) However, on December 6, 2023, Roe went to the Cornell University Police Department ("CUPD") to falsely report that Plaintiff had sexually assaulted her the night prior. (Cmpl. ¶ 43) That same day, the CUPD reported the alleged incident to Cornell's Office of Institutional Equity and Title IX (the "Title IX Office"). (Cmpl. ¶ 44) On December 19, 2023, Roe met with Cornell's Title IX Office, where she again claimed that Plaintiff had sexually assaulted her on the night of December 6, 2023. (Cmpl. ¶ 45) Despite the severity of her claims, Roe stated that she did not want to pursue a formal Title IX complaint against Plaintiff. (Cmpl. ¶46)

In the spring of 2024, the police decided that they would not pursue charges against Plaintiff due to insufficient evidence. (Cmpl. ¶ 47) Evidently disappointed by this decision, Roe subsequently met with Cornell's Title IX Office again on April 23, 2024, nearly four months after the initial meeting, and requested to file a formal complaint. (Cmpl. ¶ 48) However, Roe did not sign the formal complaint until nearly one month later, on May 21, 2024. (Cmpl. ¶ 49) To Plaintiff's complete shock, he received a written Notice of Allegations on May 24, 2024, which charged him with sexual assault. (Cmpl. ¶50)

While Plaintiff's statements throughout the investigation remained consistent—that Roe gave affirmative consent to all sexual activity on the night of December 5, 2023 into December 6, 2023—Roe's version of events changed drastically. (Cmpl. ¶ 51) Roe made many statements about the alleged incident which evolved and escalated over time to make Plaintiff's conduct seem more severe. (Cmpl. ¶ 52)

A hearing was subsequently held for Roe's complaint against Plaintiff. (Cmpl. ¶ 56) Following the hearing, on January 6, 2025, the Hearing Panel issued a detailed 25-page decision which found Plaintiff not responsible for sexual assault (the "Hearing Decision"). (Cmpl. ¶ 57)

The Hearing Decision found there was insufficient evidence to determine by a preponderance of the evidence that Plaintiff engaged in sexual activity with Roe without her affirmative consent. (Cmpl. ¶ 58) The Hearing Decision also noted: "Either party may appeal a decision of the Hearing Panel to a three-member Appeal Panel." (Cmpl. ¶ 59)

As Plaintiff was found not responsible, he did not appeal the decision. (Cmpl. ¶ 60) Roe did, however, appeal the Hearing Decision, claiming that she did not give affirmative consent, and, to the contrary, that she actually told Plaintiff "no." (Cmpl. ¶ 61) Significantly, this was the first time throughout the investigation that Roe unequivocally claimed that she told Plaintiff "no," which was in line with Roe's pattern of embellishing her story as the investigation proceeded. (Cmpl. ¶ 62)

On March 14, 2025, the Appeal Panel, despite being in "total agreement with the Hearing Panel's findings regarding credibility and what more likely than not occurred in respondent's bedroom," overturned the Hearing Decision to find Plaintiff responsible for sexual assault. (Cmpl. ¶ 63) Instead of performing an objective analysis of the Hearing Decision, the Appeal Panel took Roe's statements at face value and explained away Roe's own inconsistent statements. (Cmpl. ¶ 64) Not only did the Appeal Panel overturn the decision and wrongfully find Plaintiff responsible for sexual assault, but the Appeal Decision also sanctioned Plaintiff to a one semester suspension, effective immediately. (Cmpl. ¶ 67) Plaintiff was then immediately escorted off campus by police. (Cmpl. ¶68)

While Roe was given an opportunity to appeal the Hearing Decision finding Plaintiff not responsible, Plaintiff was not given the same opportunity to appeal the decision of the Appeal Panel finding him responsible. (Cmpl. ¶ 69) Instead, the Appeal Panel issued an *immediate, non-appealable* sanction. (Cmpl. ¶ 70) Consequently, Plaintiff now faces a suspension and a permanent

4

disciplinary notation on his transcript. As a result of Defendant's actions, absent the requested relief, Plaintiff will be prevented from timely completing his undergraduate education and earning his degree, will be unable to gain admission to medical school in the future given the gap in his education, and will forever have to explain to future graduate schools and employers why he was suspended in his final semester of college.

## ARGUMENT

### I. Legal Standards.

#### a. New York Law Requires Anonymity.

New York state law expressly requires that students involved in sexual misconduct disciplinary proceedings must remain anonymous in any subsequent civil suit regarding the outcome of the disciplinary process:

> [I]n any proceeding brought against an institution which seeks to vacate or modify a finding that a student was responsible for violating an institution's rules regarding [sexual misconduct], the <u>name and identifying biographical information of any student shall be presumptively confidential and shall not be included in the pleadings and other papers</u> from such proceeding absent a waiver or cause shown as determined by the court.

N.Y. Educ. Law § 6448 (McKinney). Accordingly, Plaintiff posits that this Court need not engage in the ordinary balancing test to determine the instant motion, as the anonymity Plaintiff seeks is required by law. However, even under the relevant Second Circuit balancing test, Plaintiff should still prevail, as his interest in retaining anonymity greatly outweighs the public interest in disclosure.

#### b. The Second Circuit Balancing Test.

The Second Circuit has identified the relevant inquiry on a motion to proceed by pseudonym as "a balancing test that weighs the plaintiff's need for anonymity against countervailing interests in full disclosure." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189

(2d Cir. 2008) (reversing district court's denial of plaintiff's motion to proceed by pseudonym, where plaintiff was suing state and municipal officers for sexual assault). In balancing these interests, the reviewing court should look to the following non-exhaustive factors: (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. *Id.* at 190 (alterations in original) (internal quotations and citations omitted). Importantly, this "factor-driven balancing inquiry" does not require a district court "to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Rapp v. Fowler*, 537 F. Supp. 3d 521, 527 (S.D.N.Y. 2021).

When the factors favoring non-disclosure outweigh the factors favoring public access, the reviewing court should grant the plaintiff's motion to proceed by pseudonym. As explained in further detail below, an evaluation of the relevant factors in this case militates in favor of permitting Plaintiff to proceed pseudonymously.

**II.  Plaintiff's Interest in Remaining Anonymous Outweighs the Need for Public Disclosure.**

> **a.  The Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature.**

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation. As is evident from the Complaint, the claims underlying the disciplinary outcome at issue involve extremely intimate, sexual acts between young adults. Plaintiff respectfully suggests that the need for privacy of the involved students significantly outweighs the general public's need to know their identities.

Further, Plaintiff does not contend that the revelation of his name would result in mere embarrassment. Rather, Plaintiff notes the highly sensitive issues involved with claims of sexual assault. Moreover, recognizing the delicate nature of cases such as the one at bar, courts across the country have routinely permitted similarly situated plaintiffs—students falsely accused of sexual misconduct and/or intimate partner violence—to proceed by pseudonym, acknowledging the great danger such plaintiffs face in proceeding under their own names, and the futility of the lawsuit if the allegations will be forever publicly associated with plaintiffs' names.

As this Court has explained, "protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected." *Doe v. Colgate Univ.*, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) (emphasis added). *See also Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) (student found

responsible for sexual misconduct); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (student found responsible for sexual misconduct); *Doe v. Univ. of Scis.*, 2019 WL 632022, at *1 (E.D. Pa. Feb. 14, 2019) (plaintiff permitted to proceed as John Doe without formal motion practice); *Doe v. Trustees of Boston Coll.*, 892 F.3d 67 (1st Cir. 2018); *Doe v. Pennsylvania State Univ.*, 336 F. Supp. 3d 441, 442 (M.D. Pa. 2018); *Doe v. George Washington Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Univ. of S.C*, 2018 WL 1215045, at *1 (D.S.C. Feb. 12, 2018) ("Doe has demonstrated compelling interests in anonymity in this matter because of the personal and sensitive nature of the underlying facts of this case, which involve allegations of sexual assault."), *report and recommendation adopted*, 2018 WL 1182508 (D.S.C. Mar. 6, 2018); *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 805 (E.D. Pa. 2017) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 202 n.1 (D. Mass. 2017) (noting court had previously granted plaintiff's pseudonym motion, where plaintiff student was found responsible for sexual misconduct in school Title IX proceeding); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016) (plaintiff student found responsible for sexual assault permitted to proceed as John Doe); *Doe v. Univ. of St. Thomas*, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("In cases involving intensely personal matters, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy. . . . The complaint and its supporting documents describe very private sexual acts, whether consensual or not, between two young college students, and it is difficult to imagine any resolution of this case without further exploration of truly intimate matters." (citations omitted)); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D. Mass. 2016) (student found responsible for sexual assault); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (granting motion to proceed as pseudonym by student found

responsible for sexual misconduct); *Doe v. Middlebury*, 2015 WL 5488109 (D.Vt. Sept. 16, 2015) (student found responsible for sexual misconduct); *Doe v. Univ. of S. Florida Bd. of Trustees*, 2015 WL 3453753 (M.D. Fla. 2015) (student accused of battery, threats, and violence against girlfriend); *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015) (student accused of sexual assault); *Doe v. Washington & Lee Univ.*, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) (student expelled after finding of nonconsensual intercourse); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses . . . involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names." (*citing Plaintiffs I–XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068–69 (9th Cir.2000)); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) (student found responsible for sexual misconduct); *Doe v. Penzato*, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (granting motion by plaintiff alleging sexual assault to proceed as pseudonym); *Doe v. Grinnell Coll.*, No. 17-cv-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017), ECF No. 39 (finding "the determinative factor here is that disclosure of plaintiff's identity would cause the injury litigated against to be incurred as a result of the disclosure"); *Doe v. Allegheny College*, No. 17-cv-00031 (W.D. Pa. May 1, 2017), ECF No. 18 (granting plaintiff's motion to proceed by pseudonym); *Doe v. Swarthmore College*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014), ECF No. 3 (finding the balance in favor of anonymity "compelling").

Thus, factor one weighs heavily in favor of non-disclosure.

**b. Identification of Plaintiff would Pose a Risk of Retaliatory Physical or Mental Harm to Plaintiff.**

Although the issue at the heart of this case is Cornell's failure to follow its own policies and the requirements of Title IX, the subject matter of sexual misconduct and false accusations is a highly volatile issue in the public discourse, and identifying Plaintiff would unduly place him at risk for physical or mental harm.

The nature of the subject matter at hand, and the social and political climate surrounding accusations of sexual misconduct, strongly warrant protection of the parties by permitting them to remain anonymous. As other courts have noted, "it stands to reason that there are some persons who would seek to inflict physical or mental harm on Doe if they learned of his real name, especially in light of the ongoing national conversation about sexual misconduct on college campuses." *Alger*, 317 F.R.D. at 40 (granting motion to proceed by pseudonym to male student plaintiff found responsible for sexual assault in university Title IX proceeding, over defendants' objection that plaintiff "has not been targeted for violence to date [and] cannot name any individual friend or relative of Roe's who might potentially target him"); *see also Doe v. Virginia Polytechnic Inst. & State Univ.*, 2018 WL 5929647, at *3 (W.D. Va. Nov. 13, 2018) (granting motion to proceed by pseudonym to male student plaintiff found responsible for sexual assault in university Title IX proceeding, because identification "may put him at risk for physical or mental harm"); *Doe v. Trs. of Univ. of Pennsylvania*, No. 16-cv-05088-JP (E.D. Pa. Sept. 26, 2016) ECF No. 12 (granting motion for pseudonym, noting the plaintiff "has a legitimate fear of significant harm should the preliminary finding of his responsibility for a sexual assault be made public"); *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[M]any courts have held that, in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a

10

pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm.").

Thus, factor two also weighs heavily in favor of non-disclosure.

### c. Identification Presents Other, Severe Harms, Including that the Injury Litigated Against Would Be Incurred as a Result of the Disclosure of Plaintiff's Identity.

The revelation of Plaintiff's identity would result in significant, irreparable harm to Plaintiff, the exact type of which he seeks to avoid by the commencement of this lawsuit. Specifically, if Plaintiff were required to reveal his identity, any ultimate success in this matter would be negated by the disclosure of his name. Any public internet searches of his name would ultimately turn up results including this lawsuit and the false—yet damning—allegations of the accuser, as well as Cornell's finding of responsibility. In that regard, even if Plaintiff were to achieve his objective of removing the suspension from his academic records, potential future employers, educational institutions, and even future romantic partners would all have access to these allegations at their fingertips – all it takes is a Google search. *See Rapp v. Fowler*, 537 F. Supp. 3d 521, 527 (S.D.N.Y. 2021) ("it bears mentioning that the digital age has adversely affected the privacy of litigants. The days when court records of litigation largely escaped public notice as they languished in countless file rooms largely ended with the advent of electronic case files, the internet, search engines, and other aspects of the information age.")

Additionally, the potential for irreparable harm should his name be revealed is of particular concern in this case, where Plaintiff intends to apply to medical school. Attaining admission to medical school is already a highly competitive endeavor. Should Plaintiff's name be publicly disclosed, the chances of him ever gaining admission to a medical school of the caliber that he would otherwise qualify for will drop significantly. Undoubtedly, his chances of admission will

become almost nil should Plaintiff also be forced to contend with the social stigma associated with being found responsible and dismissed for sexual assault, regardless of whether the decision is ultimately overturned as the result of litigation.

Surely this Court can take judicial notice of the prolific rise of the #MeToo movement, which has created a sea change in the nation's views on sexual misconduct, and, more importantly, on the social, professional, and personal implications of being publicly accused of sexual assault. Social media is now regularly weaponized against men accused of misconduct, with online petitions and protests calling for their termination, resignation, and repudiation, oftentimes before the allegations are even tested in any kind of reliable, unbiased proceeding.

According to the New York Times, since the rise of #MeToo, "at least 200 prominent men have lost their jobs after public allegations of sexual harassment." Carlsen *et al.*, *#MeToo Brought Down 200 Powerful Men. Nearly Half of Their Replacements are Women*, N.Y. Times, (Oct. 29, 2018), https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html. Notably, the list of 200 only represents individuals "who permanently lost their jobs or significant roles, professional ties or projects (e.g., concert tours, book deals) within the past year after publicly reported accusations of sexual misconduct," and does not include "cases of those put on temporary or indefinite leave." And, in the vast majority of the listed cases, the repercussions came on the basis of *allegations alone*, which the accused denied. *See also,* Brian Stelter and Tom Kludt, *NBC Fires Matt Lauer After Complaint About 'Inappropriate Sexual Behavior'*, CNN (Nov. 29, 2017), https://money.cnn.com/2017/11/29/media/matt-lauer/index.html?iid=EL (Accused male fired without formal finding); *CBS News Fires Charlie Rose After Sexual Misconduct Allegations*, CBS News (Sept. 23, 2018), https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexual-misconduct-allegations/ (Accused male fired without formal finding).

Likewise, college students accused of sexual misconduct have faced intense backlash and harassment when their identities have been revealed, even when their cases were either not yet adjudicated, or they were found not responsible. *See, e.g.*, Mitchell Byars, *Protests at CU set for Monday as Student Charged in Rape*, Boulder Daily Camera (Mar. 14, 2019) https://www.dailycamera.com/2019/03/14/protests-at-cu-set-for-monday-as-student-charged-in-rape/ (University of Colorado students demanding school expel student *accused* of sexual assault; posters with the accused student's photo and the allegations posted on campus); Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times (Dec. 21, 2014) https://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html (student accused of sexual assault *and found not responsible* in university Title IX proceeding was "denounced as a rapist on fliers and in a rally in the university's quadrangle," had his "name . . . plastered on campus bathrooms and published in easily searchable articles," and had his photo posted on the internet by "detractors . . . as warnings to strangers"); Patrick Witt, *A Sexual Harassment Policy that Nearly Ruined My Life*, Boston Globe (Nov. 3, 2014), https://www.bostonglobe.com/opinion/2014/11/03/sexual-harassment-policy-that-nearly-ruinedlife/hY3XrZrOdXjvX2SSvuciPN/story.html (article written by Yale student accused of unspecified acts in an "informal" university proceeding, explaining that revelation of the allegations "cost me my reputation and credibility, the opportunity to become a Rhodes scholar, the full-time job offer I had worked so hard to attain, and the opportunity to achieve my childhood dream of playing in the NFL. I have had to address it with every prospective employer whom I've contacted, with every girl that I've dated since, and even with Harvard Law School during my admissions interview.").

Similar outcomes have resulted from findings of responsibility. *See* Richard Adams, *Warwick University Says Rape Threat Pair Won't Return*, Guardian (Feb. 4, 2019) https://www.theguardian.com/education/2019/feb/05/warwick-university-says-threat-pair-wont-return (students found responsible for making rape threats successfully appealed initial ten-year suspension, resulting in protests by "[s]enior academics and heads of department," "a number of Warwick alumni contacted the university to express their dismay [and a] student protest meeting [being] planned," and "an online petition rapidly gained thousands of signatures" to ban the students); *see also* Cathy Young, *Exclusive: Brown University Student Speaks Out on What It's Like to Be Accused of Rape*, Daily Beast (June 8, 2014), https://www.thedailybeast.com/exclusive-brownuniversity-student-speaks-out-on-what-its-like-to-be-accused-of-rape (student found responsible for sexual assault in university proceeding and suspended for one year; accuser subsequently publicly identified the student, leading to public protests, national news stories, and televised commentary by a United States senator that the accused student "brutally raped" the complainant and "should be in jail, not with a one-year suspension").

In other words, the harm that Plaintiff faces should he be publicly identified in this matter could not possibly be ameliorated by an eventual adjudication in his favor: the existence and publication of the allegations alone would forever impact his life in concrete, detrimental, life-altering ways that go well beyond any sort of immaterial, low-level "embarrassment." *See Doe v. Alger*, 317 F.R.D. at 42 ("The court agrees with Doe that irreparable harm to his name is a relevant factor here and that it tips in favor of anonymity. If he were not allowed to proceed anonymously, part of the relief he seeks—expungement of his student record—would fall short of making him whole: the cat would have already been let out of the bag.").

14

By way of further example, in *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 622 (E.D. Va. 2016), not only was the plaintiff—a male university student found responsible for sexual misconduct—permitted to litigate by pseudonym, he ultimately won summary judgment against the university on the specific grounds that the stigma associated with being found responsible for sexual assault, combined with the sanction imposed by the university, constituted a concrete injury:

> [P]laintiff's lost opportunity to continue with his post-secondary education, coupled with the possibility that he may be unable to pursue meaningful educational opportunities elsewhere while his name remains associated with sexual misconduct, inevitably affects plaintiff's professional prospects. . . . And *common sense suffices to understand that an adjudication of responsibility for sexual misconduct carries a much more powerful stigma* than an adjudication of run-of-the-mill assault or vandalism.

*Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d at 622 (emphasis added). *See also Doe v. Cummins*, 662 Fed. Appx. 437, 445 (6th Cir. 2016) (when plaintiff male university student was found responsible by his university for sexual assault, "the adverse disciplinary decision did, and continues to, impugn his reputation and integrity, thus implicating a protected liberty interest."). The fact that courts have recognized the stigma of a sexual assault adjudication as sufficiently damaging to constitute a legally cognizable harm underscores Plaintiff's fear of disclosure in the instant matter as much more than a mere personal desire to avoid embarrassment.

Similarly, the United States District Court for the District of New Hampshire has astutely recognized:

> [T]hese potential harms are severe and reasonable. . . . [S]ignificant in this case is plaintiff's argument that public disclosure will subject him to reputational damage and will impair his future educational and career prospects, regardless of the actual outcome of this action. Plaintiff cites other campus sexual-assault cases to show that the mere accusation that one has committed a sexual assault can subject the accused to lasting reputational damage and harassment, even

> where, as here, the accused is ultimately found not culpable of
> sexual assault. Such a concern is only exacerbated in the Internet
> age, which can provide additional channels for harassment and will
> connect plaintiff's name to [the school's]'s findings and sanction
> forever, whether or not he is successful in this litigation. . . .
> Plaintiff has a reasonable fear that, *whatever the outcome of the
> action, public identification will subject him to severe reputational
> harm and harassment*, and will defeat the very purpose of this
> litigation.

*Doe v. Trustees of Dartmouth Coll.*, 2018 WL 2048385, at \*5–6 (D.N.H. May 2, 2018) (emphasis

added) (citations omitted). *See also Doe v. Univ. of St. Thomas*, 2016 WL 9307609, at \*2 (D. Minn.

May 25, 2016) ("Even if his lawsuit were successful and his claims of unfair treatment were

vindicated down the road—an outcome about which the Court offers no opinion of likelihood—

the complained-of damage to Mr. Doe's reputation would be perhaps unfixable if his identity is

known. . . . [F]orcing Mr. Doe to proceed under his true name would guarantee a permanent label

as a sexual offender, discoverable with a simple Google search; that is arguably worse than the

reputational harm he complains of from the University's currently confidential disciplinary

proceedings. This factor weighs heavily in favor of pseudonymous proceeding.").

The harm that Plaintiff fears if his name is revealed in this case is concrete, severe, and

lasting, and would ultimately render any subsequent victory on the merits hollow, as the very

damage he seeks to avoid by this lawsuit would be incurred as a result of the disclosure. In the

current social climate, a mere allegation of sexual assault alone is enough to ruin a person's life

and career, particularly for a student who seeks to enter the medical field. Plaintiff should not be

forced to risk his entire professional future and personal reputation in order to have his case heard

on the merits. His interest in privacy by far outweighs the public interest in open proceedings.

Thus, factor three weighs heavily in favor of non-disclosure.

### d. Plaintiff Is Particularly Vulnerable to the Possible Harms of Disclosure, Particularly in Light of His Age.

Plaintiff in the instant case is a young man, not yet graduated from college and at the very inception of his adult life. As discussed above, permitting disclosure of his identity, and thus subjecting him to the stigma of having been found responsible for sexual assault, would effectively end his medical career before it has even begun, and could severely detriment his ability to participate in all of the ordinary endeavors of adult life. Indeed, the very reason for bringing this action is because Cornell's findings and actions will irreversibly impair Plaintiff's ability to pursue his personal, professional, and academic future if not reversed and remedied immediately.

Thus, factor four weighs heavily in favor of non-disclosure.

### e. The Suit is Challenging the Actions of a Partially Federally-Funded University.

With respect to this factor, courts recognize that "where a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong[, because in] such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights." *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). Plaintiff is suing Cornell University, a partially federally-funded private college. Although Cornell is not necessarily a government entity, it is also not an entirely private corporation. In the instant case, there is a strong public interest in vindicating the rights of male students at Cornell, given the University's non-compliance with federal law and their own policies.

As the District Court for the Eastern District of New York has explained, a private school and its employees "are neither governmental entities nor ordinary private parties. However, . . . the [school] 'is organized solely to perform an important, public service' and the [employee] is

17

employed to assist in achieving the [school]'s goals. Given the significant roles held by these defendants in their community, plaintiff's allegations . . . raise concerns affecting a larger association rather than the interest of an individual plaintiff." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (quoting *EW,* 213 F.R.D. at 111–12); *see also Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) (when a lawsuit "affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process.").

Thus, factor five weighs in favor of non-disclosure.

### f.  Defendant Is Not Prejudiced by Allowing Plaintiff to Press His Claims Anonymously.

Permitting Plaintiff to appear in this matter as John Doe and precluding Defendant from revealing Plaintiff's identity in court filings or otherwise will not "prejudice[e] the opposing party's ability to litigate the case." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000). In the instant case, Defendant is well aware of Plaintiff's identity. As such, Defendant is perfectly able to defend this case, as it may gather relevant evidence (the vast majority, if not all of which, is in Defendant's possession), conduct discovery, and formulate defenses just as it would if Plaintiff were to proceed under his own name. Thus, "[o]ther than the need to make redactions and take measures not to disclose plaintiff's identity, defendant[] will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. at 198.

Thus, factor six weighs heavily in favor of non-disclosure.

### g.  The Plaintiff Has Sought to Keep his Identity Confidential.

"The extent to which the plaintiff's identity has been kept confidential may . . . affect the weight of the privacy interest," because the plaintiff's interest in anonymity throughout the

litigation is stronger where he has sought to protect his anonymity prior to the litigation. *Doe v. Del Rio*, 241 F.R.D. at 158. In the instant case, the only people to whom Plaintiff has disclosed this matter include his immediate family, his legal counsel, and a few very close friends, for emotional support. *See* Plaintiff Declaration in Support of Motion for Pseudonym, ¶ 10. Moreover, due to the constraints of the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, Defendant is generally restricted from revealing Plaintiff's disciplinary records absent certain circumstances.

Thus, Plaintiff has done everything in his power to maintain anonymity, and factor seven weighs in favor of non-disclosure.

> **h.  The Public's Interest in the Litigation is not Furthered by Requiring Plaintiff to Disclose His Identity, and There is a Weak Public Interest in Knowing Plaintiff's Identity.**

The primary public interest in the instant action is Cornell's treatment of male students, whether its Title IX processes violate state and federal law, and whether there is a pattern of bias and discrimination against male students. Although the specifics of the case are, of course, relevant to this determination, Plaintiff's identity in and of itself has no relevance to the public interest. For example, Plaintiff is not a public figure, nor a supervisory employee of the University, such that the public would have an interest in learning his specific identity. As such, there is a weak public interest in learning Plaintiff's identity, and the public's interest in this matter would not be furthered by disclosing Plaintiff's identity.  *See Doe No. 2 v. Kolko*, 242 F.R.D. at 195 (permitting student alleging sexual assault by Rabbi at Yeshiva school to proceed pseudonymously). As the Fifth Circuit has opined:

> The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical. The public right to scrutinize governmental functioning is not so completely impaired by a grant of anonymity

> to a party as it is by closure of the trial itself. Party anonymity does
> not obstruct the public's view of the issues joined or the court's
> performance in resolving them. The assurance of fairness preserved
> by public presence at a trial is not lost when one party's cause is
> pursued under a fictitious name.

*Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 574 (1980)). *See also Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (protecting Plaintiff's identify will not "impede the public's ability to follow the proceedings"). Thus, factors eight and nine weigh in favor of non-disclosure.

### i. There Are Minimal Alternative Mechanisms for Protecting the Confidentiality of the Plaintiff.

The final factor for this Court's consideration is whether there are alternative mechanisms for protecting Plaintiff's confidentiality. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190. In the instant case, the only alternative method would be to seal the entirety of this action; however, doing so would provide even less public access than Plaintiff's proposal of simply protecting the identities of the involved students.

Thus, factor ten weighs in favor of non-disclosure.

## CONCLUSION

Based on the foregoing, in consideration of New York State law and the balancing of the relevant interests, this Court should allow Plaintiff to proceed by pseudonym in this matter and to identify the other, non-party students by pseudonym. The interests of Defendant and/or the public will not be harmed if Plaintiff's name is not revealed, whereas Plaintiff, along with the non-party students involved in this matter, would be subject to great risk of harm and prejudice if Plaintiff is forced to disclose his identity at this time. For these reasons and other such reasons as may appear just to the Court, Plaintiff respectfully requests that his *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

20

Dated: March 21, 2025
New York, New York

Respectfully submitted,

NESENOFF & MILTENBERG, LLP

By: /s/ *Tara J. Davis*
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Tara J. Davis, Esq.
Kristen Mohr, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com
kmohr@nmllplaw.com

*Attorneys for Plaintiff John Doe*